IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LANDON DEVON FIELDS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:21-cv-00225 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| LINDSEY SCHMITTINGER, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Plaintiff Landon Devon Fields ("Plaintiff"), a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983, against several correctional officers and administrators of the Albemarle-Charlottesville Regional Jail ("ACRJ") alleging violations of his Eighth and Fourteenth Amendment rights under the U.S. Constitution. (*See generally* Compl. [ECF No. 1].) Plaintiff claims the defendants knowingly used "[c]onstant [i]llumination" in his cell to cause "sleep deprivation" and associated injuries, violating his constitutional protection against cruel and unusual punishment. (*Id.* ¶ 25–26.) Plaintiff also claims the defendants failed to properly address his verbal and written complaints about the conditions of his confinement, thereby violating his constitutional due-process rights. (*Id.* ¶ 27–29.)

This matter is before the court on Defendants Lindsey Schmittinger, Aaron Carver, Robert Barnabei, and Martin Kumer's (collectively "Defendants") motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15.) After reviewing the record, the court concludes that Plaintiff has failed to state a claim upon which relief can be granted. Accordingly, the court will grant Defendants' motion to dismiss.

## I.

At all times relevant to the alleged violations, Plaintiff was housed as an inmate at ACRJ. The allegations in Plaintiff's complaint concern the conditions of his confinement from July 1, 2020, until February 1, 2021. (*See* Compl. ¶¶ 9–10.) During this seven-month period, Plaintiff was placed on administrative segregation and housed in a "quiet cell."[1] (*Id.* ¶ 9.) Plaintiff alleges his cell was equipped inside with an "Ultra Bright Double Fluorescent Light Fixture" and outside with "Flood lights" that shone directly on him 24 hours a day.[2] (*Id.* ¶¶ 9, 19, p. 7.) According to Plaintiff, on July 2, 2020, he complained to Carver, an ACRJ Correctional Captain, that these lights in his cell were "extremely bright and make it very difficult to sleep." (*Id.* ¶ 11.) The same day, Carver told Plaintiff that the lights are not turned off in the cells in administrative segregation. (*Id.* ¶ 12.)

From July 3 through August 25, 2020, Plaintiff made several verbal and written requests for a grievance form to complain about the lights inside his cell. (*Id.* ¶¶ 13–14.) Plaintiff received a grievance form on August 26, 2020, and he filed a grievance related to "[c]onstant [i]llumination" causing "Sleep Deprivation" and negative effects to his Schizophrenia. (*Id.* ¶ 15.) Defendant Schmittinger, an ACRJ First Lieutenant, returned the grievance form as "not grievable" because "[l]ights do not get turned off in [Plaintiff's] type of Segregation . . . ." (*Id.* ¶ 16.) Schmittinger informed Plaintiff that he could appeal the grievance to the ACRJ Superintendent, Defendant Kumar, and Plaintiff did so on September 10, 2020. (*Id.* ¶ 17.)

---

[1] Neither party explains what a "quiet cell" is or why Plaintiff was placed in administrative segregation. Neither issue is dispositive, however, and Plaintiff does not challenge his placement in administrative segregation.

[2] According to Plaintiff, the light fixture inside of his cell was present for the entirety of his incarceration at ACRJ, while the flood lights outside the cell were installed in January 2021. (*See* Compl. ¶¶ 9, 19.)

At some point in January 2021, what Plaintiff describers as flood lights were installed outside his cell. (*Id.* ¶ 19.) Plaintiff immediately began complaining to "nurses and officers about how bright the lights were." (*Id.* ¶¶ 19–20.) Plaintiff was even seen by the ACRJ medical unit and referred to see an eye doctor for alleged vision damage. (*Id.* ¶ 20.)

On January 8, in response to Plaintiff's verbal complaints, ACRJ maintenance spray-painted the flood lights with white paint in an effort to dim them. (*Id.* ¶ 21.) When Plaintiff continued to complain about the flood lights, Defendant Barnabei, an ACRJ Correctional Major and Associate Superintendent, issued a work order to paint over them again. (*Id.* ¶ 22.)

In February 2021, Plaintiff was transferred to Nottoway Correctional Center. (*Id.* p. 3.) At the time of his transfer, the conditions in Plaintiff's ACRJ cell remained unchanged and Defendant Kumar had not replied to Plaintiff's grievance appeal. (*Id.* ¶¶ 18, 23.) Plaintiff is currently housed as an inmate at St. Brides Correctional Center in Chesapeake, Virginia. (*Id.* p. 1.)

Plaintiff filed the instant complaint on April 19, 2021, approximately two months after his transfer from ACRJ, asserting that his exposure to "[c]onstant [i]llumination" and Defendants' failure to take reasonable remedial action in response to his complaints caused him to suffer "sleep deprivation" resulting in "severe" physical, emotional, and psychological injuries. (*Id.* ¶¶ 25–26.) Accordingly, Plaintiff seeks compensatory damages against all Defendants, a declaratory judgment that Defendants violated his constitutional rights, and a mandatory injunction ordering Defendant Kumer to turn off or dim Plaintiff's cell lights for at least eight hours per day and arrange for Plaintiff to receive medical treatment. (*Id.* p. 6–7.)

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *See Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* In considering a Rule 12(b)(6) motion, a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 556 U.S. at 679. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff must still allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

### III.

### A.

As a preliminary matter, according to Federal Rule of Civil Procedure 12(d), if matters outside the pleadings are presented to and not excluded by the court, a Rule 12(b)(6) motion must be treated as one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity to present material that is pertinent to the motion. *See* Fed. R. Civ. P. 12(d). But there are exceptions to the general rule that a court may not consider any documents outside of the complaint when ruling on a motion to dismiss for failure to state a claim. *See Witthohn v. Fed. Ins. Co.,* 164 F. App'x 395, 396 (4th Cir. 2006). Specifically, "a court may consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed" without converting the motion to one for summary judgment. *Id.* (citing *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

In their reply brief (ECF No. 25), Defendants suggest that the instant motion should be converted to one for summary judgment because Plaintiff included documents outside of the pleadings in his response in opposition to their motion to dismiss (ECF No. 21). The court finds, however, that Plaintiff only included documents explicitly referenced to in his Complaint, and that those documents' authenticity is not in dispute. The court will therefore treat Defendants' motion as one to dismiss under 12(b)(6) and will take notice of the grievance and request forms referenced in Plaintiff's complaint. (*See* Compl. ¶¶ 15–17; ECF No. 21 at 4–6).[3] But the court will not consider the documents Defendants presented to the court in their reply brief because they are not referenced in Plaintiff's complaint.

## B.

Defendants argue that dismissal under 12(b)(6) is proper on Plaintiff's Eighth Amendment claims because Plaintiff failed to allege sufficiently serious conditions that constitute a violation of his constitutional rights, and that he failed to allege sufficient personal involvement or culpability by Defendants in creating those conditions. As to Plaintiff's Fourteenth Amendment claims, Defendants argue that dismissal is proper because Plaintiff has no constitutional entitlement to access a regional jail's internal grievance procedures. Defendants also assert that Plaintiff failed to state a claim against any Defendant in their official capacity, and that Plaintiff's claims for equitable relief are moot because he is no longer incarcerated at ACRJ. The court agrees and will grant Defendants' motion to dismiss in full.

---

[3] Plaintiff attached several prison grievance forms to his response to Defendant's motion to dismiss, forms Plaintiff explicitly referenced in his complaint. Thus, the court may consider them without converting the instant motion to one for summary judgment. *See Witthohn*, 164 F. App'x at 396; *see, e.g.*, *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (collecting cases).

## C.

The Eighth Amendment protects prisoners from cruel and unusual punishment, *see, e.g., Farmer v. Brennan*, 511 U.S. 825, 832 (1994), and imposes an affirmative obligation to take reasonable measures to ensure inmate safety, *Thompson v. Va.*, 878 F.3d 89, 97 (4th Cir. 2017) (citing *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)). A prison official may violate an inmate's Eight Amendment rights either through the official's deliberate indifference or by the application of excessive force. *Id.* "The deliberate indifference standard generally applies to cases alleging failures to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, or failing to render medical assistance." *Id.* (citing *Farmer*, 511 U.S. at 834).

To assert an Eighth Amendment conditions-of-confinement claim, a prisoner must satisfy both an objective and subjective test. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). This requires a showing that the prisoner was exposed to a substantial risk of serious harm *and* that the prison official knew of and disregarded that substantial risk to the inmate's health or safety. *Thompson*, 878 F.3d at 97–98. Under the objective prong of the analysis, the prisoner must demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious' . . . ." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 298). A sufficiently serious deprivation "must be 'extreme'—meaning that it poses 'a serious or significant physical or emotional injury resulting from the challenged conditions,' or 'a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions.'" *Scinto v. Stansberry,* 841 F.3d 219, 225 (4th Cir. 2016) (quoting *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)). A prisoner's conditions of confinement "may be restrictive and even harsh" without violating the Eighth Amendment,

provided that they serve a "legitimate penological objective." *Farmer*, 511 U.S. at 833 (cleaned up).

*Farmer's* subjective prong requires that an official acted with "a sufficiently culpable state of mind," meaning he was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that he also *drew* the inference. *Id.* at 834. Whether a prison official knew of a substantial risk is a question of fact that may be shown by inference from circumstantial evidence or by "the very fact that the risk was obvious." *Id.* at 842. Deliberate indifference "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995). But "even officials who acted with deliberate indifference may be 'free from liability if they responded reasonably to the risk.'" *Scinto,* 841 F.3d at 226 (quoting *Farmer,* 511 U.S. at 844).

Plaintiff complains Defendant's failure to turn off or dim the fluorescent light inside of his cell and flood lights outside of his cell created a condition of "[c]onstant [i]llumination" causing "sleep deprivation" and associated physical, emotional, and physiological injuries in violation of his Eighth Amendment rights. (Compl. ¶¶ 25–26.) Defendants assert that Plaintiff's allegations fail to satisfy either the objective or subjective prong of a conditions of confinement claim, because constant illumination of Plaintiff's cell did not constitute an "objectively sufficiently serious" deprivation and that, in maintaining those conditions, Defendants did not act with "deliberate indifference" to a substantial risk of serious harm to Plaintiff. *See Scinto,* 841 F.3d at 225.

It is true that "sleep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013); *see Harper v. Showers,* 174 F.3d 716, 720 (5th Cir. 1999) ("[S]leep undoubtedly counts as one of life's basic needs."). And other circuits have found that bright, constant illumination that causes "grave sleeping problems and other mental and psychological problems" can establish an Eighth Amendment violation. *Keenan v. Hall*, 83 F.3d 1083, 1090–91 (9th Cir. 1996); *see Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 374 (3d Cir. 2019). Constant illumination is not a *per se* violation of the Eighth Amendment, however, and it is permissible when it is reasonably related to a legitimate penological interests, such as inmate and officer security or the need to monitor segregated prisoners. *See, e.g.*, *O'Donnell v. Thomas,* 826 F.2d 788, 790 (8th Cir. 1987); *Ferguson v. Cape Girardeau Cnty.*, 88 F.3d 647 (8th Cir. 1996).

Here, Plaintiff alleges the existence of a condition—constant illumination—that may constitute an objectively serious deprivation which he was subjected to for a period of approximately seven months. But Plaintiff fails to allege that—or how—each Defendant caused or contributed to the creation or maintenance of that condition. *See Iqbal,* 556 U.S. at 676 (noting that a plaintiff must plead that each "defendant, through the official's own actions, has violated the Constitution"); *Fortune v. Clark*, No. 7:19cv481, 2021 WL 4453619 at *3 (W.D. Va. 2021) (dismissing *pro se* prisoner complaint concerning "a constantly lit cell" where he did "not allege what actions any defendant took that contributed to or caused" the condition). Plaintiff does not allege that any of the charged parties were responsible for selecting or installing the light fixtures, nor does he allege that any Defendant had the authority to set or change ACRJ lighting policy. While it may be reasonable to infer that Defendants placed

Plaintiff on administrative segregation and thus into the type of cell that contained the complained-of lights, that alone does not constitute a serious deprivation. *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) ("[C]hanges in conditions of confinement (including administrative segregation), and denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison . . . .").

Assuming, *arguendo*, that the constant illumination of Plaintiff's cell did constitute an objectively sufficiently serious deprivation, Plaintiff has not alleged facts sufficient to reasonably infer that any of the Defendants acted with "a sufficiently culpable state of mind," *Farmer*, 511 U.S. at 834, equal to "recklessness of the subjective type used in criminal law," *Brice*, 58 F.3d at 105 (4th Cir. 1995). Thus, Plaintiff has failed to state a viable Eight Amendment conditions-of-confinement claim.

### D.

Turning to Plaintiff's Fourteenth Amendment claims, to state a procedural due process claim against a prison official, an inmate must establish three elements. First, he must allege that he was denied a liberty interest arising under the Constitution or state law, *Wilkinson v. Austin*, 545 U.S. 209, 226 (2005); second, that the denial imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 484 (1995); and third, that the process employed by the prison was "constitutionally inadequate," *Lovelace v. Lee*, 472 F.3d 174, 202 (4th Cir. 2006). Fourth Circuit precedent is clear that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994). Thus, to the extent Plaintiff asserts ACRJ's grievance procedures constituted a violation of

due process, he fails to state a claim. *See id; see also Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Further, Plaintiff has not alleged any facts that would permit the inference that any of the Defendants abused ACRJ grievance procedures or denied Plaintiff access to any grievance procedures. On the contrary, Plaintiff has alleged that Defendant Carver responded to Plaintiff's verbal complaints. (Compl. ¶¶ 11–14.) Defendant Schmittinger personally returned Plaintiff's grievance form with a written response and informed Plaintiff of his ability to appeal the decision. (*Id.* at ¶¶ 16–17.) Defendant Kumar received that appeal and was in the process of responding when Plaintiff was transferred. (*Id.* at ¶¶ 17, 23, p. 3.) Defendant Barnabei responded to Plaintiff's complaints by ordering maintenance to paint over Plaintiff's cell lights—twice. (*Id.* at ¶¶ 21–22.) Plaintiff's allegations concerning ACRJ grievance procedures and Defendants' responses to his complaints simply do not constitute a denial of any cognizable due process right.

### E.

Plaintiff's claims for injunctive and declaratory relief also fail. To determine whether a request for declaratory or injunctive relief has become moot, the court must examine whether the facts alleged demonstrate a substantial controversy that is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975). "A claim for equitable relief is moot 'absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'" *Randolph v. Rodgers*, 170 F.3d 850, 856 (8th Cir. 1999) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). An exception to the mootness doctrine exists when two circumstances are present: "(1) the challenged action is in its duration too

short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (citing *Hickman v. Mo.*, 144 F.3d 1141, 1142–43). But the exception "applies only in exceptional situations," *id.* (citing *Lyons*, 461 U.S. at 109; *Hickman*, 144 F.3d at 1142), and the Fourth Circuit has held that the transfer of an inmate from a unit or location where he is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief—even if a claim for money damages survives. *See, e.g., Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Here, Plaintiff has been transferred from ACRJ—where the challenged conditions existed—to a different location (first Nottoway Correctional Center and now St. Brides Correctional Center) where he is no longer subject to the challenged lighting conditions or Defendants' supervision. (Compl. p. 1, 3.) Therefore, Plaintiff's requests for declaratory and injunctive relief are moot.

## IV.

For the reasons discussed, the court will grant the Defendants' motion to dismiss.

The clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 14th day of March, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE